IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re Enron Corporation Securities, Derivative & "ERISA" Litigation | § § § § | MDL-1446 |
| MARK NEWBY, ET AL., | § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-01-3624 CONSOLIDATED CASES |
| ENRON CORPORATION, ET AL., | § § | |
| Defendants | § | |
| AMERICAN NATIONAL INSURANCE COMPANY, et al., | § § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. G-02-723 |
| CITIGROUP, INC., et al., | § § | |
| Defendants. | § | |

**OPINION AND ORDER OF PARTIAL SUMMARY JUDGMENT**

Pending before the Court in the above referenced cause alleging securities fraud under Texas statutory and common law is Plaintiffs American National Insurance Company, American National Investment Accounts, Inc., SM&R Investments, Inc., American National Property and Casualty Company, and Standard Life and Accident Insurance Company's motion for partial summary judgment (#65) that Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch & Company, Inc. (collectively,

"Merrill Lynch") are liable as a matter of law for actual damages[1] for aiding and abetting Enron's fraud under article 581-33(F)(2) of the Texas Securities Act ("TSA"), Texas Revised Civil Statutes art. 581-33(F)(2).[2]

Plaintiffs, who claim they relied on Enron's misleading SEC-filed financial statements in deciding to purchase Enron securities, in essence charge, "Incontrovertible evidence establishes that Merrill knew the sole purpose of the Barge Transaction was to enable Enron in falsifying its reported financial condition, and that Merrill intentionally, and with

---

[1] Plaintiffs do not seek a determination of actual damages in this motion, but only of liability.

[2] Article 581-33F(2) provides,

> A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer or issuer.

To establish secondary liability for aiding and abetting under the TSA, a plaintiff must prove (1) that a primary violation of the securities laws occurred; (2) that the alleged aider and abettor had a "general awareness" of its role in this violation; (3) that the aider and abettor rendered "substantial assistance" in this violation; and (4) that the aider and abettor either intended to deceive plaintiff or acted with reckless disregard of the truth of the representations made by the primary violator. *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App.--Houston [14th Dist.] 2000, pet. denied); *Goldstein v. Mortenson*, 113 S.W.3d 769, 776 (Tex. App.--Austin 2003).

reckless disregard for both the truth and the law, materially aided Enron in issuing false financial statements." #65 at 3.

## Standard of Review under Rule 56(c)

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact; the movant may, but is not required to, negate elements of the nonmovant's case to prevail on summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof a trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate

that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.*, *quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S. at 322, and *Liberty Lobby*,

477 U.S. at 249-50.[3]  The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

Given the policy of Rule 56 to promptly dispose of cases when there is no genuine issue of material fact for trial, a district court may *sua sponte* grant summary judgment for a non-movant where there is no issue of material fact and where the court provides the proper ten-day notice to the opposing party of its intention to allow that party to come forward with all of its evidence to oppose a summary judgment against it.  *Exxon Corp. v. St. Paul and Marine Ins. Co.*, 129 F.3d 781, 786-87 (5th Cir. 1997); *Shepherd v. Gulf Coast Community Services*, No. 06-20429, 2007 WL 313603, *2 (5th Cir. Jan. 30, 2007).

### Plaintiffs' Motion for Partial Summary Judgment (#65)

Criminal convictions are admissible as non-hearsay.  Federal Rule of Evidence 803(22) excepts judgments of previous felony convictions resulting from trial or from guilty pleas from the hearsay bar and allows them to be admitted into evidence in

---

[3] The court has no obligation to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  Rather the nonmovant must identify evidence in the record and demonstrate how it supports his claim.  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

subsequent trials.  Fed. R. Evid. 803(22)("Evidence of a final judgment, entered after a trial or upon a plea of guilty . . . ., adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment . . . . ").

Relating to the Nigerian Barge transaction (alleged loan disguised as a sale) between Enron and Merrill Lynch Defendants, Plaintiffs argue that the evidence[4] produced at, and the convictions resulting from, the criminal trial of several Merrill Lynch's employees, along with convictions and guilty pleas of Enron employees and with Merrill Lynch's acceptance of responsibility in an letter agreement with the Department of Justice[5] for its employees' misconduct, establish Merrill Lynch's liability for actual damages as an aider and abettor of the primary violator, Enron, under § 581.33F(2) of the TSA.  *United*

---

[4] See exhibits attached to Declaration of Angela Olalde in support of Plaintiffs' motion for partial summary judgment (#65).

[5] Plaintiffs point out that on September 17, 2003 Merrill Lynch settled a DOJ criminal investigation of its role in the Nigerian Barge transaction after evidence revealed that it and Enron had violated federal criminal law.  In the letter agreement (Ex. 1 to #68) Merrill Lynch accepted responsibility for any of its employees' conduct giving rise to a violation in connection with the Year-End 1999 transactions and agreed not to publicly contradict the fact that it had accepted such responsibility.
 The SEC sued Merrill Lynch in February 2003 for aiding and abetting securities fraud.  Merrill Lynch deposited $80 million into the court registry, and on March 19, 2003, without admitting or denying the allegations, consented to entry of a final judgment against it.  Ex. 2 to #68. *SEC v. Merrill Lynch & Co.*, Civ. Action No. H-03-0946 (S.D. Tex. 2003).

*States v. Brown*, CR No. H-03-363 (S.D. Tex.), *aff'd in part, rev'd in part, and vacated in part*, 459 F.3d 509 (5th Cir. 2006)(holding *inter alia* that the honest services theory of wire fraud did not cover a scheme in which the employees' interests did not sufficiently diverge from those of the employer), *cert. denied,* __ U.S. ___, No. 06-975, 2007 WL 120795 (U.S. May 14, 2007).[6]

Plaintiffs emphasize that Merrill Lynch has admitted responsibility for its employees' violations. Although some of these convictions have been overturned, Plaintiffs note that James Brown's conviction (for perjury and obstruction of justice) is final and is evidence that Merrill Lynch is liable for aiding Enron's fraud. It also points to the Fifth Circuit's opinion reversing all the Defendants' convictions based on the government's theory of "honest services," in which the panel stated that its reversal "should not be read to suggest that no dishonest, fraudulent, wrongful or criminal act has occurred. We hold only that the alleged conduct is not a federal crime **under the honest-services theory of fraud specifically**. [emphasis in original]" *U.S. v. Brown*, 459 F.3d at 523.[7] Plaintiffs submit substantial documentary evidence, including sworn statements by Enron officials who pled guilty, to argue that as matter of law

---

[6] The third superseding indictment in the criminal case was filed on July 5, 2004, and the jury verdict was entered on November 5, 2004.

[7] The government has since informed Judge Werlein that it will retry the case, H-03-CR-363. #277 at H-02-CV-4788.

Merrill Lynch is liable under the TSA for aiding and abetting Enron in selling securities to deceived investors.

### Merrill Lynch's Opposition (#68)

Article 581-33(F)(2) of the TSA creates liability for a

> person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer . . . .

To establish an aiding and abetting claim against Merrill Lynch under article 581-33(F)(2) of the TSA, Plaintiffs must first establish that there was a primary violation of article 581-22(A)(2) by Enron. *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 840-41 (Tex. 2003). Article 581-33(A)(2) provides for primary liability for one who

> offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security.

Merrill Lynch objects that the evidence does not show that Enron committed a primary violation because Enron does not qualify as a statutory "seller" under the statute; the evidence demonstrates that Enron did not sell the securities directly to Plaintiffs, but that Plaintiffs purchased their securities from

-8-

various brokers.  *In re Enron Sec., Derivative & ERISA Litig.*, 258 F. Supp.2d 576, 601-08 (S.D. Tex. 2003)(holding that under the TSA a statutory "seller" is the person who sold the security directly to the purchaser or who acted as the vendor's agent and solicited the sale).  Merrill Lynch maintains that because Plaintiffs have not and cannot show that Enron is a statutory seller, and therefore cannot show it is primarily liable under article 581-33A(2), Merrill Lynch cannot be secondarily liable under the TSA. Therefore the Court should deny Plaintiffs' motion for partial summary judgment and instead enter partial summary judgment in favor of Merrill Lynch.

Furthermore, argues Merrill Lynch, Plaintiffs fail to prove essential elements of aiding and abetting under the TSA.  Merrill Lynch notes that Plaintiffs appear to be alleging a primary violation by Enron that consists of a broad scheme or conspiracy to falsify Enron's financial statements by means of a number of fraudulent transactions (prepays, share trusts, synthetic leases, FAS 125/140 transactions) over a period of years by a number of parties.  For evidence Plaintiffs point to plea agreements and cooperation agreements of various Enron officers, in particular to Fastow's declaration, cooperation agreement, and deposition, which Plaintiffs assert describe more than forty fraudulent transactions, involving dozens of Enron insiders and secondary actors and hundreds of material misstatements and omissions.  The

motion for summary judgment, however, is based on a single transaction, the Nigerian barge transaction.  All the summary judgment evidence relates only to that transaction.  Plaintiffs offer no evidence of the other elements of a secondary violation of the TSA, i.e., that Merrill Lynch was "generally aware" of the alleged overall Ponzi scheme, as opposed to the one discrete, Nigerian Barge transaction, or that Merrill Lynch "materially" or "substantially assisted" the overall scheme,[8] or that it "intentionally or recklessly" aided the overall scheme. *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835 (Tex. 2005)(reversing trial court judgment that bank was liable for aiding and abetting an investment advisor because trial court failed to submit jury instruction on whether bank was "generally aware" of the overall pyramid scheme; investors had to show not merely that bank ignored internal procedures or negligently handled investment advisors account, but also that the bank was "subjectively aware of the primary violator's improper activity").  At minimum these are questions of fact that should be left to the jury.

---

[8] Merrill Lynch claims that Enron's scheme distorted its total debt by $12.87 billion, its pre-tax income by $3.28 billion, and its operating cash flow by $10.34 billion.  In comparison, the Barge transaction contributed only $7 million of the hidden debt, $12 million of the $3.2 billion in misstated income, and none of the misstated cash flow.  #68 at 12.

-10-

Because Plaintiffs fail to meet their burden of proof on each of these elements of aiding and abetting, Merrill Lynch urges that the motion for partial summary judgment should be denied.

Even if the motion focused only on the Nigerian barge transaction, argues Merrill Lynch, many Plaintiffs purchased their securities before it was executed; under Texas law a plaintiff/purchaser who buys a security before the alleged fraud takes place cannot state a claim under the TSA because the sale could not have been made "by means" of an untrue statement. Second, for those who purchased after the barge transaction, Merrill Lynch contends there is a genuine issue of material fact as to whether Enron's alleged misstatements and omissions about the barge transaction (the evidence regarding which Merrill Lynch claims shows had only a *de minimis* effect on Enron's 1999 earnings) were material to Plaintiffs' decision to buy Enron securities in 2000 and 2001.

### Plaintiffs' Reply (#70)

Plaintiffs clarify that they seek summary judgment on liability only with respect to common stock purchased during 2001, an Enron bond purchased in 2001, and commercial paper purchased in 2001, all after publication of Enron's SEC Form 10-K for the year ending December 31, 2001. (#70 at 2) Thus the Court finds Merrill Lynch's last objection moot.

**Primary Violator and Privity**

-11-

Plaintiffs maintain that they purchased the commercial paper directly from an Enron agent, Lehman Brothers, and thus Enron was a statutory seller at least as to the commercial paper.  Ex. A to #70 (documents evidencing purchase of commercial paper); Ex. B at 3 (Responses of Defendants Lehman Brothers and Lehman Brothers Inc. to Plaintiffs' Second Set of Interrogatories:  "With respect to the Enron commercial paper at issue in this lawsuit, Lehman states that, during the relevant time period, it was one of the dealers in Enron commercial paper."); Ex. C at 365:4-20 (LeMire Dep.: explaining that for purchase or sale of Enron commercial papers, Lehman Brothers was the broker to contact because it was the market maker).  Plaintiffs contend that because they purchased the commercial paper direct from an agent for Enron with actual authority to sell it on Enron's behalf, Enron, as a principal liable for its agent's conduct, was a primary violator as a seller, based upon agency principles.  Plaintiffs point out that the TSA in defining "sale," "sell" or "offer to sell" includes any act of selling, including solicitation of sale, an attempt to sell or offer to sell "directly or by an agent or sales man . . . ." Tex. Rev. Civ. Stat. art. 581-4E.   They contend that Lehman Brothers also offered and solicited Plaintiffs on behalf of Enron regarding the commercial paper they purchased.  Ex. D  at 213-14 (Burr Dep.); Ex. C at 364-65 (Lemire Dep.).   Thus, also pursuant to agency principles, Plaintiffs represent that Enron is a primary

-12-

violator under section 33A(2) as an offeror of commercial paper.
They note that Merrill Lynch has acknowledged that the status of
a primary violator can be based on agency.  Response at 6 ("a
statutory seller is a person who sold the security directly to the
purchaser or who acted as the vendor's agent and solicited the
sale"), *citing In re Enron*, 258 F. Supp.2d at 601-08.

Plaintiffs further insist that Enron was a "statutory issuer"
as to the other securities at issue.  Article 581-33C[9] of the TSA
imposes primary liability on issuers of registered securities
purchased on a secondary market for misleading statements in the
prospectus; Plaintiffs purchased the Enron common stock and the
bond, which were registered securities, on the secondary market,

_____

[9] The provision states,

(C) Liability of Nonselling Issuers Which Register.

(1) This Section 33C applies only to an issuer which
registers under Section 7A, 7B, or 7C of this Act, or
under Section 6 of the U.S. Securities Act of 1933, its
outstanding securities for offer and sale by or for the
owner of the securities.

(2) If the prospectus required in connection with the
registration contains, as of its effective date, an
untrue statement of a material fact or an omission to
state a material fact necessary in order to make the
statements made, in light of the circumstances under
which they are made, not misleading, the issuer is liable
to a person buying the registered security who may sue
either at law or in equity for rescission or for damages
if the buyer no longer owns the securities.  However, an
issuer is not liable if it sustains the burden of proof
that the buyer knew of the untruth or omission.

specifically the New York Stock Exchange.[10]   Ex. E at 2-3, 4
(registration statement dated June 15, 2000 for Enron common
stock); Ex. F at S-5 (prospectus for bond stating securities to
be registered); Ex. G (prospectus, incorporating by reference
Enron's Form 10-K for period ending Dec. 31, 1999).  Thus, argue
Plaintiffs, Enron was a primary violator under § 581-33C.

    As for other elements of aiding and abetting liability under
581-33F(2), Plaintiffs point to the court's statement in *Sterling
Trust Co. v. Adderley* that under the TSA the aider and abettor

_____

[10] In a law review article on which this Court relied in its March
12, 2003 opinion, Hal Bateman in *Securities Litigation: The 1977
Modernization of Section 33 of the Texas Securities Act*, 15 Houston
L. Rev. 847, 849 (1978) explains,

> Section 33C applies only to issuers which register
> outstanding securities for sale by owners under either
> section 7 of the Texas Securities Act or section 6 of the
> Securities Act of 1933.  This means that section 33C will
> apply only to registered secondary offerings by persons
> other than the issuer and will not apply in primary
> offerings by the issuer itself, although the liability
> created is a special liability of the issuer.  With
> respect to registered secondary offerings, section 33C
> provides that the issuer of the security is liable to any
> person who buys the registered security if, as of the
> effective date, the prospectus required in connection
> with the registration contains a material misstatement of
> fact or fails to state any material fact necessary to
> make what is stated not misleading.  Liability clearly
> will extend to any buyer of the registered security and
> no privity limitation or requirement is included.  Nor is
> it necessary for the plaintiff to prove reliance on the
> misstatement or omission in the prospectus.  The sole
> basis of liability of the issuer under section 33C is
> material misstatement or omission in the prospectus, and
> the only defense available under section 33C is proof
> that the plaintiff actually knew of the untruth or
> omission. [footnotes omitted]

must be "generally aware of its role in an improper scheme."  168
S.W.3d at 840, *citing Gould v. American-Hawaiian S.S. Co.*, 535
F.2d 761, 779 (3d Cir. 1976)("the required knowledge . . . has
been defined as a 'general awareness (on the part of the aider and
abettor) that his role was part of an overall activity that is
improper' and that 'the proof offered must establish conscious
involvement in impropriety or constructive notice of intended
impropriety."").  Plaintiffs challenge Merrill Lynch's argument
that *Adderley* requires Plaintiffs to prove that the defendant was
'generally aware' of the primary violator's overall wrongdoing,
not simply some discrete part of that wrongdoing.  Plaintiffs
define the "overall activity" at issue here as "Enron's
falsification of its year-end financial statements."  They argue
that Merrill Lynch clearly knew that the falsification of SEC-
filed financial statements was untruthful and illegal; they assert
that the documents arising from the Nigerian Barge Transaction
describing concern for Merrill Lynch's "reputational risk" and the
need for secrecy in the "handshake deal" demonstrate that Merrill
Lynch was fully aware that it was aiding Enron's planned
falsification of its financial reports.  Thus they have shown
Merrill Lynch's "conscious involvement in impropriety or
constructive notice of intended impropriety."  *Adderley*, 168
S.W.3d at 840 (*quoting Gould*, 535 F.2d at 779-80).  Exhibits 1,

10, 11, 13, 14, 19, and 45 to motion for partial summary judgment (#65).

Plaintiffs insist that the summary judgment record demonstrates that Merrill Lynch provided substantial, material assistance to Enron by allowing Enron to meet analyst expectations for the year ending December 31, 1999.[11] Bankruptcy Examiner Neal Batson's Third Interim Report, App. I, Ex. 59 at 2, 3 to #65, discusses how Merrill Lynch's 1999 year-end transactions "allowed Enron to meet its earnings targets for the year" and "had a material impact on Enron's reported financial performance for 1999." Enron's internal communications also reflect the importance of the Nigerian Barge Transaction. #65, Exs. 7, 59. The Congressional investigations, criminal prosecutions against Merrill Lynch employers for participation in the transaction, and an SEC enforcement action that yielded an $80 million payment by

---

[11] The First Amended Complaint (#46) asserts,

329. These transactions [the Nigerian Barge Transaction and the Power Trades Transaction] resulted in Enron's recognition of approximately $60 million in income for the fourth quarter of 1999, improving net income from $199 million to $259 million--a 30% increase.

330. Even more significant, because the fraudulent "earnings" enabled Enron to meet 1999 earnings targets, the 1999 year-end fraud had the effect of favorably impacting Enron's stock price and allowing Enron to raise millions of dollars from the bond market at "investment grade" interest rates. In other words, without Merrill Lynch's aid, Enron's Ponzi scheme might have been stopped dead in its tracks in 1999.

Merrill Lynch further indicate that Merrill Lynch provided substantial aid to Enron.  Plaintiff argue that there is no authority for the proposition that "substantial assistance" is or should be measured only in the number of falsely reported dollars of income or earnings that the aider and abettor's wrongdoing add to the primary violator's financial statements.

Under article 581-33F(2) liability accrues if the aider and abettor either (a) has intent to deceive or defraud, (2) or with disregard for the truth, or (3) with reckless disregard for the law, materially aids the primary violator.  Plaintiffs claim they have provided evidence that Merrill Lynch intended to deceive, had reckless disregard for the truth, and reckless disregard for the law in actions directly related to the primary violator's securities violation. *Adderley*, 168 S.W.3d at 842; #65 at 50-54 and Exs. 10, 11, 13, 14, 45, and 65 at 50-51.  The test is not, as Merrill Lynch contends, whether Plaintiff's evidence is directly related to the overall scheme or only to a small and discrete part of the scheme, but whether Merrill Lynch's "assistance would facilitate untruthful or illegal activity by the primary violator."  Whether Enron or others' conduct may have aided Enron in filing a false Form 10-K is not relevant for purposes of determining Merrill Lynch's intent to deceive or reckless disregard for the truth or law.

-17-

Merrill Lynch argues that Plaintiffs must also show that Enron's misstatements or omissions relating to the Barge Transactions were material to Plaintiffs' decision to purchase Enron securities. #68 at 16; *Weatherley v. Deloitte & Touche*, 905 S.W.2d 642, 649 (Tex. App.--Houston [14th Dist.] 1995, writ dism'd w.o.j.)("A statement or omission is material 'if there is substantial likelihood that a reasonable investor would consider it important in deciding to invest.'"), *abrogated on other grounds, Tracker Marine L.L.P. v. Ogle*, 108 S.W.3d 349 (Tex. App.--Houston [14th Dist.] 2003). Plaintiffs respond that Merrill Lynch cites no authority for placing such a burden on them to show secondary liability and that Merrill Lynch also fails to identify to which element of an article 581-33F(2) claim it would relate. Plaintiffs have identified Enron's 1999 Form 10-K, which a reasonable investor would have considered in deciding to invest, to establish the materiality of Enron's primary violation. They assert that they have established the materiality of Merrill Lynch's secondary violation by showing that Merrill Lynch's assistance to Enron was substantial. *Frank v. Bear, Stearns & Co.*, 11 S.W.3d 380, 384 (Tex. App.--Houston [14th Dist.] 2000)(To establish aiding and abetting liability under article 581-33F(2), a plaintiff must show (1) that a primary violation of the securities law occurred; (2) that the alleged aider "had general awareness" of its role in this violation; (3) that the actor

rendered "substantial assistance" in this violation; and (4) that the aider and abettor either (a) intended to deceive the plaintiff or (2) acted with reckless disregard for the truth of the representations made by the primary violator.).

Plaintiffs point out that the TSA does not require any contact between the plaintiff and the aider and abettors. *Adderley*, 168 S.W.3d at 843. Thus Merrill Lynch is not required to know the particular misrepresentations or misleading omissions made by Enron to Plaintiffs, contrary to Merrill Lynch's argument that they must show specifically which primary violator misrepresentations relate to the aider and how those misrepresentations would have affected Plaintiffs' investment decisions. *Id.* at 845 ("A primary violator is the party actually making the misrepresentations or misleading omissions, and it therefore makes sense to focus on whether it knew the statements were untrue. On the other hand, an aider may know that the primary violator is engaging in improper activity, but, if the aider is not involved in the actual sale or offer of the securities, it may not know what particular misrepresentations or misleading omissions were made to the investors. Consequently, it makes sense to predicate liability on the aider's 'reckless disregard for the truth or law' rather than the aider's knowledge of specific misrepresentations or omissions.").

**Merrill Lynch's Sur-reply (#72)**

-19-

Because Plaintiffs have not argued until filing their reply brief that Lehman Brothers acted as Enron's agent to meet the privity requirement in article 581-33A(2) or that Enron is primarily liable under article 581-33C, Merrill Lynch urges the Court to strike the new arguments and rule on the existing pleadings and Merrill Lynch's opposition to the motion for partial summary judgment. *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 551 (N.D. Tex. 2006)(striking arguments in reply brief because "a movant should not be permitted to cure by way of reply what is in fact a defective motion").

If the Court does not strike the new arguments, Merrill Lynch contends that these claims fail as a matter of law.  First, Merrill Lynch argues that Plaintiffs' "evidence" ((1) an answer to an interrogatory by Lehman Brothers stating that it was "one of the dealers in Enron commercial paper" and (2) the deposition testimony of an SM&R Investments, Inc. employee stating that Lehman Brothers "was the broker to contact [for Enron's commercial paper] because Lehman Brothers was the market maker") does not establish that Lehman Brothers was Enron's agent and that Enron is "vicariously liable" for Lehman Brothers' sale of commercial paper to Plaintiffs under article 581-33A(2).  Instead, Merrill Lynch says the evidence demonstrates that Lehman Brothers was an unrelated, third-party broker that purchased and sold Enron securities.  Merrill Lynch explains that commercial paper generally is sold in two ways:  (1) it is placed directly with investors without the use of a dealer; or (2) it is sold through

-20-

dealers that purchase the commercial paper from the issuers and then sell it to investors, as was the case here with Lehman Brothers acting as the dealer. *See* 4 Marilyn Blubber Cane, *Banking Law* § 96.13[1] (Matthew Bender & Co. 2007). Once Enron sold the commercial paper to Lehman Brothers, Enron had no control over Lehman Brothers's subsequent sales and thus was not Enron's agent, and Plaintiffs do not and cannot show that Enron was Lehman Brothers' employer or that Enron controlled the means and methods of Lehman Brothers' work. *Elk River, Inc. v. Garrison Tool & Die Ltd.*, ____ S.W.3d ____, No. 05-06-00158-CV, 2007 WL 926403, *6-7 (Tex. App.--Dallas, Mar. 29, 2007)(when a company sells its product to a distributor, but then does not have any control over where or to whom the distributor sells the product, the distributor is not an agent of the company); *Happy Indus. Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 884, 849 (Tex. App.--Corpus Christi, 1998, pet. dism'd w.o.j.)(same).[12]

Second Plaintiffs cannot establish a primary violation by Enron that relates to Enron's sale of the stocks and bond under article 581-33C because article Tex. Rev. Civ. Stat. art. 581-5H[13]

---

[12] Merrill Lynch argues that cases cited by Plaintiffs do not show that Lehman Brothers was acting as Enron's agent, but only stand for the general proposition that an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his agency or employment.

[13] Article 581-5H exempts from other provisions of the TSA "[t]he sale of any security to any bank, trust company, building and loan association, insurance company, surety or guaranty company, savings institution, investment company and defined in the Investment Company Act of 1940, small business investment company as defined

explicitly excludes from provisions of the TSA, unless they expressly indicate otherwise, the sale of securities to insurance companies and investment companies, such as Plaintiffs.[14]

Second Plaintiffs have offered no evidence that they can "trace" their stock and bond purchases directly to the allegedly materially misleading public offering in question.   Given the complete lack of any available case law interpreting article 581-33C, Merrill Lynch looks to opinions interpreting analogous federal securities laws for guidance.  *Adderley*, 168 S.W.3d at 840 ("the Legislature intended the TSA to be interpreted in harmony with federal securities law");  *Anheuser-Busch Co. v. Summit Coffee Co.*, 858 S.W.2d 928, 939 (Tex. App.--Dallas 1993, writ denied)(stating that decision from federal courts analyzing federal securities laws are reliable guides for interpreting provisions of the TSA), *vacated on other grounds by* 514 U.S. 1001 (1996), *on remand*, 934 S.W.2d 705, 708 & n.6 (Tex. App.--Dallas 1996)(writ dismissed by agreement Oct. 24, 1996)(declining to

_____

in the Small Business Investment Act of 1958, as amended, or to any registered dealer actually engaged in buying and selling securities."   Merrill Lynch cites to documents that demonstrate that Plaintiffs American National Insurance Company, American Nation Property and Casualty Company, and Standard Life and Accident Insurance Company are insurance companies, while American National Investment Accounts, Inc. and SM&R Investments, Inc. are investment companies as defined under the Investment Company Act of 1940.  #72 at 7 n.3.

[14] Articles 581-33(A) and (B), expressly state that liability attaches "whether or not the security or transaction is exempt under Section 5 . . . of this action."  Article 581-33C has no such language.

interpret article 581-33(A)(2) in accordance with the Supreme Court's interpretation of 15 U.S.C. § 77(2) because the language of the two provisions was different; specifically the phrase in article 581-33(A)(2), "by means of a prospectus or oral communication," is broader than that of its federal counterpart and the article therefore is not governed by *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)).[15]

Merrill Lynch observes that the federal statute most analogous to article 581-33C of the TSA is § 11 of the Securities Act of 1933, 15 U.S. C. § 77k. *See also* Tex. Rev. Civ. Stat. art. 581-33C cmt. (stating that article 581-33D "is similar in effect to U.S. Securities Act § 1, 15 U.S.C. § 77k"). Both are strict liability statutes that would impose liability if a company makes a public offering of securities pursuant to a false registration statement or prospectus, even if the material misstatement is made innocently, and a plaintiff is not required to prove reliance. *See Gustafson*, 513 U.S. at 572 (stating that Section 11 is "chiefly concerned with disclosure and fraud in connection with offering of securities"); Tex. Rev. Civ. Stat. art. 581-33C cmt. (stating that article 581-33C creates liability for a material untruth or omission in a prospectus for a secondary offering); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 945 (5th Cir. 2005)(stating that section 11 creates "virtually absolute" liability for issuers); Bateman, *Securities Litigation*, 15 Hous.

---

[15] Merrill Lynch does not provide the subsequent history of the original opinion from the Dallas Court of Appeals.

L. Rev. at 849-50 (stating that article 581-33C is a strict liability provision).

Moreover, argues Merrill Lynch, standing under Section 11 is limited to "any person acquiring such security" under the materially misleading registration statement or to those aftermarket purchasers able to "trace" the security back to the misleading registration statement at issue (restricting standing to a "subset of security owners"). *Krim*, 402 F.3d at 494-97. Article 581-33C has similar language (only a person "buying the registered security" under a materially misleading prospectus can sue) and, according to Merrill Lynch, should be therefore interpreted the same way as the federal statute.[16]

---

[16] This Court notes that Bateman, in *Securities Litigation*, 15 Hous. L. Rev. at 849-50, notes that liability under article 581-33C is "quite unusual in state securities law":

> Although it bears close similarity to the liability created in section 11 of the Securities Act of 1933, substantial differences exist. Liability under section 33C only extends to the prospectus, not to the entire registration statement, and it applies only in secondary and not in primary distributions. The only defendant under section 33C is the issuer and no due diligence defense is available. The liability created by section 11 of the Securities Act of 1933 seems entirely appropriate since that statute is premised on the disclosure philosophy of securities registration rather than the merit standard philosophy. Under the disclosure philosophy a strict liability in the event of a materially deficient disclosure is both proper and necessary. However, in securities registration matters, Texas, like most states, adheres to the merit standard philosophy under which the Securities Commissioner is principally concerned with evaluating the merits of the securities offered to buyers in a registered offering. Under this philosophy strict liabilities, such as the one

Merrill Lynch notes that Plaintiffs focus on two prospectuses and one registration statement[17] that incorporate Enron's materially false year-end 1999 10-K.  Plaintiffs then attempt to expand the class of plaintiffs with standing to sue under article 581-33C by arguing that because they purchased Enron stocks and bonds *after* the prospectuses and registration statements were filed, Enron is liable to them.  Federal courts interpreting Section 11 have rejected the expansive view that a company is strictly liable to every person who purchases that company's securities after it files a materially false prospectus; instead the statute requires aftermarket purchasers to show that they can "trace" their shares back to the initial offering of securities that are the direct subject of the defective prospectus and registration statement. *Krim*, 402 F.3d at 499; *Barnes v. Osofsky*, 373 F.2d 269, 271-72 (2d Cir. 1967); *In re Global Crossing Ltd. Sec. Litigation*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003).  Merrill Lynch insists that Plaintiffs have not offered any evidence that the stocks and bond that they purchased in 2001 are traceable to the offerings they have cited.

In sum, Merrill Lynch insists, because Plaintiffs cannot prove a primary violation by Enron as a direct seller or under an

---

created by section 33C, seem inconsistent and out of place.

[17] As noted, unlike Section 11, article 581-33C applies to prospectuses, but not to registration statements.  Merrill Lynch points out that Plaintiffs' "attempt to establish liability based on the June 16, 2000 registration statement for Enron common stock should be rejected."  #72 at 9 n.6.

agency theory under article 581-33A(2), nor under article 581-33C, Merrill Lynch cannot be secondarily liable.  Therefore the Court should enter summary judgment in favor of Merrill Lynch.  *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir. 1989)(where the moving party cannot prove an essential element of his cause of action, the district court can grant summary judgment to the non-moving party even if that party did not file a formal motion for summary judgment), *cert. denied*, 497 U.S. 1010 (1990), *abrogated on other grounds, Advance United Expressways, Inc. v. Eastman Kodak Co.*, 965 F.2d 1347 (5th Cir. 1992).

As a final matter, Merrill Lynch identifies as fact issues (1) whether Enron's primary violation was "material" to Plaintiffs' decision to invest in Enron securities; (2) whether Merrill Lynch was "generally aware" of these transactions and misstatements; and (3) whether Merrill Lynch "substantially assisted" these transactions.  Merrill Lynch states that it cannot make such determinations because of Plaintiffs' shifting identification of what constituted Enron's primary violation:  (1) a massive scheme, involving dozens of improper transactions and hundreds of materially misleading statements and omissions, to defraud shareholders; (2) Enron's misstatements relating to the Nigerian Barge Transaction; or (3) the misstatements in Enron's year-end 1999 10-K.  If Plaintiffs are asserting the last of the three, their motion for partial summary judgment must be denied because they have not offered any evidence to support their claim.

**Court's Decision**

-26-

**Convictions and Guilty Pleas**

With regard to evidence of the Nigerian Barge Defendants' convictions, it is not sufficient to establish liability under the civil causes of action asserted here.   More to the point, Plaintiffs cannot use the now vacated convictions of Daniel Bayly, James Brown, Robert Furst, and William Fuhs for wire fraud and conspiracy to prove Merrill Lynch is liable in this civil action for aiding and abetting securities fraud.   Where a conviction is vacated, there is no final judgment.[18]   *Burgo v. Commissioner of Internal Revenue*, 69 T.C. 729, 739-40 (1978).[19]   The only

_____

[18] *See also Adventure RV Rentals, Inc. v. Auto-Owners Insurance Co.*, 562 F. Supp. 445, 448 (N.D. Ind. 1983)("For this Court to grant defendant's motion for summary judgment based on the state criminal conviction, only to have the state appellate court later reverse that conviction, would render this court's decision a nullity because based on a void state court conviction.").   Here, of course, the convictions have already been vacated and are nullities.

[19] Hearsay is inadmissible as evidence for summary judgment purposes under Federal Rule of Civil Procedure 56.   *Warfield v. Byron*, 436 F.3d 551, 559 (5th Cir. 2006).   Federal Rule of Evidence 803(22) provides that "evidence of a final judgment," i.e., an out-of-court statement offered for the truth of the matter asserted, is an exception to the hearsay rule:

> Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused.   The pendency of an appeal may be shown but does not affect admissiblity.

Federal Rule of Evidence 609 addresses impeachment by evidence of

conviction not vacated by the Fifth Circuit, with the Supreme

conviction of a crime.  Rule 609(e) states, "The pendency of an appeal therefrom does not render evidence of a conviction inadmissible.  Evidence of the pendency of an appeal is admissible."  Rule 609(c) provides in relevant part, "Evidence of a conviction is not admissible under this rule if . . . (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence."

As explained by Judge Hall in *Burgo*, where a criminal conviction is vacated, it becomes a nullity, and there is no "final judgment" that would be admissible under Rule 803(22).  69 T.C. at 740.  As for Rule 609, he wrote,

> Although rule 609 does not explicitly state that evidence of a conviction reversed or vacated by an appeal is not admissible under this rule to impeach a witness, we infer this condition from rule 609(e) and the case law that preceded the Federal Rules.  Rule 609(e) provides that the pendency of an appeal does not render evidence of a conviction inadmissible; this provision supports in two ways petitioner's contention that evidence of a conviction which has been reversed or vacated is inadmissible under rule 609.  First, rule 609(e) would be superfluous if any conviction, whether or not reversed on appeal, is admissible.  A specific provision allowing convictions on appeal to be used as evidence would not be needed if any conviction, whether appealed, reversed or vacated[,] could be used as impeachment evidence.  Second, by inference, a specific provision allowing convictions on appeal to be used as impeachment evidence implies that if the appeal is successful, the evidence is not admissible.  This inference is supported by the Advisory notes to rule 609(e), which states [*sic*]:

> The presumption of correctness which ought to attend judicial proceedings supports the position that pendency of an appeal does not preclude use of a conviction for impeachment.

> When a conviction has been reversed or vacated, this presumption of correctness is no longer applicable; accordingly, the conviction would not be admissible under rule 609 after a successful appeal. [footnote omitted]

*Id.* at 741.  Judge Hall also cited and discussed a number of cases decided before adoption of the Federal Rules of Evidence to support his conclusion.  *Id.* at 741-42.

-28-

Court denying his petition for writ of certiorari was that of
James Brown for perjury and obstruction of justice relating to his
appearance before the grand jury, clearly not relevant to the
claims in this case.

As for the guilty pleas of former Enron employees (including
Andrew Fastow, Richard Causey, and Ben Glisan), a guilty plea is
an "admission of the material facts alleged in a complaint or
indictment." *Robinson v. Boston Housing Authority*, No. 964972,
1999 WL 791947 (Mass. Super. 1999).  "A guilty plea is as much a
conviction as a conviction following a jury trial." *Gray v.
Commissioner of Internal Revenue*, 708 F.2d 243, 246 (6th Cir.
1983), *cert. denied*, 466 U.S. 927 (1984).

As with convictions by jury verdict, Rule 803(22) provides
that judgments based on guilty pleas are exceptions to the hearsay
rule and are therefore admissible in a subsequent civil proceeding
"even though the declarant is available as a witness," when
offered "to prove any fact essential to the judgment."  The
Committee Note regarding Rule 803(22) does not take a position on
use of a judgment on a criminal conviction or a plea of guilty as
a res-judicata or collateral-estoppel bar,[20] which would depend on
relevancy and materiality of the evidence.  The Note does state
that when a former judgment of a criminal conviction of felony

---

[20] For issue preclusion, traditionally there must be a final
judgment on the merits that actually decides an issue necessary to
the judgment in the subsequent litigation.  C. Wright, et al., 18B
*Federal Practice and Procedure* § 4474 at 413 (West 2002).

-29-

grade[21] is submitted in a subsequent litigation and is not barred
by res judicata, the rule adopts the position that the former
judgment "is admissible in evidence for what it is worth."
Committee Note to Rule 803(22).  The Note observes that court
decisions

> manifest an increasing reluctance to reject *in toto* the
> validity of the law's factfinding processes outside the
> confines of res judicata and collateral estoppel.
> While this may leave a jury with the evidence of
> conviction but without means to evaluate it, . . . it
> seems safe to assume that the jury will give
> substantial effect unless defendant offers a
> satisfactory explanation, a possibility not foreclosed
> by the provision. [citations omitted]

As C. Wright, et al., 18B *Federal Practice and Procedure* §
4474.1 at 445 (West 2002), admonishes, "The plea-based conviction
does not actually adjudicate the fact issues necessary to
establish guilt, and accordingly should not support issue
preclusion"; *id.* at 4473.1 at 451 ("The [plea] conviction does not
rest on actual adjudication or determination of any issue.  Just
as issue preclusion should not rest on civil judgments by consent,
stipulation or default, so it should not rest on a plea of guilty.
. . . The lack of actual adjudication is fatal to issue
preclusion"); *in accord* 1B J. Moore, *Moore's Federal Practice* ¶
0.418[1] at 2707-08 (2d ed. 1982).  As pointed out in *Gray v.
C.I.R.,* 708 F.2d at 248 (Merritt, J.), approximately 90% of all

---

[21] Committee Note 22 to Rule 803 observes, "Practical
considerations require exclusion of convictions of minor offenses
not because the administration of justice in its lower echelons
must be inferior, because the motivation to defend at this level is
often minimal or nonexistent."

criminal convictions in the United States are based on guilty
pleas.  Frequently the defendant does not have a "'full and fair
opportunity to litigate the fraud issue.  Like most criminal
defendants, Gray faced a powerful incentive to strike a plea
bargain in which he exchanged his right to litigate the
government's charges in return for a lenient sentence. [citations
omitted]"  *Id.*  Judge Merritt emphasized that although "[w]idely
recognized as an effective device to further the important
societal goal of reducing the number of criminal trials on crowded
court dockets," nevertheless "plea bargaining fundamentally alters
the strategy a defendant would otherwise pursue in responding to
criminal charges."  *Id.*  He quotes Justice Robert Traynor in
*Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal.2d 601, 605-06,
25 Cal. Rptr. 559, 561, 375 P.2d 439, 441 (1962):
"'Considerations of fairness to civil litigants and regard for the
expeditious administration of criminal justice . . . combine to
prohibit the applications of collateral estoppel against a party
who, having pleaded guilty to a criminal charge, seeks for the
first time to litigate his cause in a criminal action.'"  *Gray*,
708 F.2d at 248.

Moreover, here the guilty pleas are not from the employees
of Merrill Lynch, but employees of Enron, being used against
Merrill Lynch.  While their guilty pleas may be preclusive of
their own intent to defraud, and though admissible in this action
to be weighed as evidence by the jury, they cannot preclude

-31-

Merrill Lynch's right to a full and fair opportunity to litigate them and their impact on its own employees.

Thus this Court finds that the evidence of the conviction of James Brown, but not those of the other Merrill Lynch employees, and the evidence of guilty pleas of Enron employees, while admissible, have not been shown to be preclusive and are not a sufficient basis, without an opportunity to respond, for granting summary judgment to Plaintiffs on the TSA claims as a matter of law.   Thus the Court denies Plaintiffs' motion for summary judgment on Plaintiffs' original basis.

**Striking New Arguments in Reply Brief**

It is well established "that a district court may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 & n.10 (5th Cir. 2004), *citing Seay v. Tenn. Valley Authority*, 339 F.3d 454, 481-82 (6th Cir. 2003)("the purposes of notice and opportunity to respond extend Rule 56(c) to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond"); *Booking v. General Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001)("Rule 28 of the Federal Rules of Appellate Procedure . . . has no analogue in the Federal Rules of Civil Procedure, and in most cases trial judges can provide parties with an adequate opportunity to respond to particular arguments by

ordering additional briefing."); and *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998)("when a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the moving party should be granted an opportunity to respond"). *See also International Center for Technology Assessment v. Johanns*, 473 F. Supp. 2d 9, 21 (D.D.C. Feb. 5, 2007). Here the Court granted Merrill Lynch's motion for leave to file sur-reply and has considered that sur-reply and evidence (#73) in its review. It therefore denies Merrill Lynch's request that it strike Plaintiffs' reply.

As noted before, a district court may *sua sponte* grant summary judgment for a non-movant where there is no issue of material fact and where the court provides the proper ten-day notice to the opposing party of its intention to allow that party to come forward with all of its evidence to oppose a summary judgment against it. *Exxon Corp. v. St. Paul and Marine Ins. Co.*, 129 F.3d 781, 786-87 (5th Cir. 1997); *Temple v. FDIC*, 988 F.2d 24, 25 (5th Cir. 1993)("The Fifth Circuit has long recognized that a district court may *sua sponte* grant summary judgment for a nonmoving party provided all of the procedural safeguards of Rule 56 are followed."); *McCarty v. U.S.*, 929 F.2d 1085, 1088 (5th Cir. 1991)(same); 10A C. Wright, *et al.*, *Federal Practice & Procedure Civ. 3d* § 2720 (1973). Here, Merrill Lynch has argued that Plaintiffs have failed to produce evidence to support the elements of their claims against it under the TSA and has asked the Court

-33-

to grant it partial summary judgment on the TSA clams against it. If the non-movant bears the burden of proof at trial, the movant does not have to support its motion with evidence negating the opponent's case, but may satisfy its burden by showing there is an absence of proof to support the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1004). In this case, Plaintiffs bear the burden of proof on their TSA claims against Merrill Lynch. Furthermore, the Court agrees with Merrill Lynch that Plaintiffs have failed to produce evidence supporting essential elements of the TSA claims.

**Statutory Primary Violator**

As indicated earlier, Plaintiffs must show there was a primary violation of the TSA by Enron before they can show that Merrill Lynch was a secondary violator of the statute as an aider and abettor.

There is no evidence in the record that Enron sold any of the securities at issue directly to Plaintiffs, so there is no evidence of privity between them for purposes of imposing primary liability on Enron under article 581-33(A)(2).

Although Plaintiffs have argued that Lehman Brothers acted as an agent for Enron in selling the commercial paper to Plaintiffs and that therefore Enron, as the principal, is liable as a primary violator of Article 581-33A(2), they have not pled such an agency theory in the First Amended Complaint (#46). Nor, as Merrill Lynch has pointed out, have Plaintiffs produced competent evidence to support their new agency allegations in the

-34-

face of Merrill Lynch's own motion for partial summary judgment,
based in part on the lack of evidence of an agency relationship.

"Under Texas law, agency is a mixed question of law and
fact." *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1295-96 (5th
Cir. 1995). Nevertheless, if the evidence is undisputed, whether
an agency relationship exists is a question of law for the court.
*Coffey v, Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 677 (N.D.
Tex. 1998), *citing Campbell v. Hamilton*, 632 S.W.2d 633, 634 (Tex.
App.–Dallas 1982, writ ref'd n.r.e.). *See also Ross v. Texas One
Partnership*, 796 S.W.2d 206, 209-10 (Tex. App.–Dallas 1990, writ
denied)("Although the question of agency is generally one of fact,
the question of whether a principal-agent relationship exists
under established facts is a question of law for the courts.").
Under Texas law, "[a]gency is never to be presumed; it must be
shown affirmatively.  The party who asserts the existence of
agency relationship has the burden of proving it." *Karl Rove*, 39
F.3d at 1296.  Because Plaintiffs have not presented competent
evidence of agency here, the Court concludes that whether an
agency relationship existed between Enron and Lehman Brothers is
a matter of law.

> Under Texas law,
>
> Agency is a legal relationship created by an express or
> implied agreement or by operation of law whereby the
> agent is authorized to act for the principal, subject
> to the principal's control.  As in the formation of any
> contract, the consent of both parties is necessary to
> establish an agency relationship. . .  To prove an
> agency relation under Texas law, there must be evidence
> from which the court could conclude that "[t]he alleged
> principal [had] the right to control both the means and

the details of the process by which the alleged agent
[was] to accomplish the risk. [citations omitted]"

*Karl Rove*, 39 F.3d at 1296.

Plaintiffs have produced no evidence of any express or
implied agreement or of any law imposing such a relationship on
Enron and Lehman Brothers as a dealer of its commercial paper.
Nor have they argued, no less shown, that Enron had any control
over Lehman Brothers' means and methods of selling the commercial
paper to Plaintiffs. "Under Texas agency law, the essential
element is the 'right of control' of the purported agent by the
purported principal." *United States v. Contemporary Health
Management*, 807 F. Supp. 47, 49 (E.D. Tex. 1992), *cited for that
proposition in Karl Rove*, 39 F.3d at 1296 n.111. *See also In re
Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 598 (5th Cir.
1991)("The alleged principal must have the right to control both
the means and the details of the process by which the alleged
agent is to accomplish his task."), *quoted by Karl Rove*, 39 F.3d
at 1296. "Absent proof of the right to control, only an
independent contractor relationship is established." *In re
Carolin Paxson Advertising, Inc.*, 938 F.2d at 598. Plaintiffs
have not met their burden of establishing an agency relationship
between Enron and Lehman Brothers.

With regard to the other securities, Plaintiffs now argue
that Enron is liable as a primary violator under article 581-33C,
as a non-selling issuer of registered securities whose prospectus
contained an untrue statement of material fact or omission.

Plaintiffs have not pled article 581-33C; the controlling First Amended Complaint (#46), in addressing Enron as the requisite statutory primary violator, references only Article 581-33A ("Liability of Sellers"), which Merrill Lynch has shown is not satisfied here with regard not only to the commercial paper, but to the Enron stock and bond because Plaintiffs did not buy their securities from Enron and there is no competent evidence that Lehman Brothers acted as Enron's agent in selling Plaintiffs the commercial paper. #46 at ¶¶ 468-69, 477. The Court agrees with Merrill Lynch that as a matter of law Plaintiffs, as insurance companies and investment companies as defined under the Investment Company Act of 1940, are excluded from asserting a claim under article 581-33C. Tex. Rev. Civ. Stat. art. 581-5H.

Because Plaintiffs have failed to show that they can satisfy the legal requirements and to provide competent evidence that Enron committed a primary violation under the TSA, the Court does not need to reach the other elements for aiding and abetting liability under article 581-33F(2).

Accordingly, the Court

ORDERS that Plaintiff's motion for partial summary judgment is DENIED; instead the Court

ORDERS that partial summary judgment on Plaintiffs' TSA claims against Merrill Lynch is GRANTED in favor of Merrill Lynch. These claims are accordingly dismissed with prejudice.

With regard to repleading as permitted in the Court's previous opinion and order (# 75), the Court

-37-

ORDERS that Plaintiffs shall file an amended complaint within thirty days of entry of this order.  Defendants shall timely answer or file new motions to dismiss or summarily reurge their earlier ones, as appropriate.

**SIGNED** at Houston, Texas, this 12th  day of June, 2007.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE